## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Jeremiah F. Jones,<br><br>Debtor. | C/A No. 18-06304-DD, 14-00864-DD, and 17-02620-DD<br><br>Adv. Pro. No. 20-80002-DD<br><br>Chapter 7 |
| Jeremiah F. Jones, Teri Denice Mayers, and Kimberly Ann Williams, individually and on behalf of all others similar situated,<br><br>Plaintiffs,<br>v.<br><br>Lexington Health Services District, Inc. d/b/a Medical Center,<br><br>Defendant. | **ORDER DENYING MOTION TO DISMISS ADVERSARY PROCEEDING** |

This matter is before the Court on a motion to dismiss the above-referenced adversary proceeding, filed by the defendant Lexington Health Services District, Inc. d/b/a Lexington Medical Center on March 4, 2020. The plaintiffs filed an objection to the motion on April 1, 2020, and the defendant filed a reply in support of the motion on April 6, 2020. The Court held a hearing on June 4, 2020. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court now denies the motion.[1]

## **BACKGROUND**

This adversary proceeding was commenced on January 10, 2020. All three plaintiffs were debtors in chapter 7 cases who listed debts to the defendant in their respective bankruptcy cases. The adversary proceeding was commenced as a putative class action. The complaint

---

[1] The Court makes no determination regarding whether a class should be certified in this case or whether a class action can or should proceed. That determination is for a later date. The Court's denial of the defendant's motion to dismiss simply finds that the present litigation against the defendant may proceed in this Court.

asserts that the defendant, using, or threatening to use, the state's Setoff Debt Collection

Program, collected the plaintiffs' tax refunds to pay medical debts incurred by the plaintiffs

despite notice of the bankruptcy filings, in violation of either the automatic stay or the discharge

injunction.  The complaint asserts causes of action for violation of the discharge injunction,

violation of the automatic stay, and unjust enrichment, each on behalf of a different class.

Each plaintiffs' situation is different, as recited in the complaint.  The facts recited here

are taken as true only for the purposes of this order.  Mr. Jones filed his bankruptcy case on

December 12, 2018 and listed a debt to the defendant.  Notice of his bankruptcy case was sent to

the defendant.  On January 25, 2019, Mr. Jones received notice that a portion of his tax refund

had been seized by the defendant.  The complaint asserts that the seized funds have been

partially refunded.  Mr. Jones seeks to represent a class of debtors during whose bankruptcy

cases the automatic stay was violated by the defendant's seizure of tax refunds through the Setoff

Debt Collection Program.

Ms. Mayers filed her bankruptcy case on February 19, 2014.  In her bankruptcy schedules

she listed three debts to the defendant. Ms. Mayers received her chapter 7 discharge on June 2,

2014, discharging her personal liability on the debts to the defendant.  The defendant received

notice both of Ms. Mayer's bankruptcy case and of her chapter 7 discharge.  Then, in spring

2019, the defendant seized a portion of Ms. Mayer's tax refund.  Ms. Mayers seeks to represent a

class of debtors whose discharged debt was collected by the defendant through the Setoff Debt

Collection Program.

Ms. Williams filed her bankruptcy case on May 25, 2017.  She listed a debt to the

defendant in her bankruptcy schedules.  Ms. Williams received her discharge on August 24,

2017, discharging her from personal liability on the debt to the defendant.  The defendant

2

received notice both of Ms. Williams' bankruptcy case and of her chapter 7 discharge.  In April

2018, the defendant began sending Ms. Williams notices seeking to collect the debt.  Ms.

Williams ultimately paid the defendant over $300.00, which it has not returned.  Ms. Williams

seeks to represent a class of debtors whose discharged debt was collected by the defendant using

threats to invoke the Setoff Debt Collection Program.

## ARGUMENTS OF THE PARTIES

The defendant asserts that it is a political subdivision and that pursuant to S.C. Code §

12-60-80(C), made applicable to this action by Federal Rule of Civil Procedure 17, it lacks the

capacity to be named as a party in a class action lawsuit.  The defendant additionally asserts that

the plaintiffs' claims against it are barred by sovereign immunity.  Finally, the defendant argues

that the plaintiffs' claims must be dismissed because the plaintiffs have not exhausted their

administrative remedies, as required by the Setoff Debt Collection Act.

The plaintiffs assert that Rule 23 controls and that state law cannot supplant this federal

rule.  The plaintiffs further respond that under Rule 17 and South Carolina state law, the

defendant has the capacity to be sued, because "capacity" is "a binary determination of whether a

given entity is subject to suit."  The plaintiffs also argue that the defendant does not have

sovereign immunity because under United States Supreme Court precedent states have waived

sovereign immunity with respect to bankruptcy matters.  Finally, the plaintiffs argue that they are

not required to exhaust their administrative remedies before bringing this action because their

causes of action are under the Bankruptcy Code, not under state law.

## LEGAL STANDARD

The defendant asserts that its motion is made pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  Federal Rule of Bankruptcy Procedure 7012(b) provides that

Fed. R. Civ. P. 12(b) applies in adversary proceedings.  Fed. R. Civ. P. 12(b) provides, in

relevant part:

> (b) How to Present Defenses.  Every defense to a claim for relief in any
> pleading must be asserted in the responsive pleading if one is required.
> But a party may assert the following defenses by motion:
>
> > (1) lack of subject-matter jurisdiction;
> > (2) lack of personal jurisdiction;
> > (3) improper venue;
> > (4) insufficient process;
> > (5) insufficient service of process;
> > (6) failure to state a claim upon which relief can be granted;
> > and
> > (7) failure to join a party under Rule 19.

Defenses of lack of capacity, sovereign immunity, and failure to exhaust administrative remedies

are typically treated under Rule 12(b)(1) or 12(b)(6).  *See Alley v. Yadkin Cty. Sheriff Dep't,*

2017 WL 5635946, at *1 (M.D.N.C. Jan. 27, 2017) ("The defense of lack of capacity to be sued

is properly brought before the Court on a motion to dismiss under Rule 12(b)(6) for failure to

state a claim.");  *Schulze v. Ratley*, 2012 WL 3964984, at *3 (D.S.C. Sept. 11, 2012) ("[P]laintiff

Schulze's claims against the defendants in their *official* capacities are dismissed for lack of

subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.")

(emphasis original); *Temples v. U.S. Postal Serv.*, 2012 WL 1952655, at *2 (D.S.C. May 8,

2012) (quoting *Laber v. Harvey*, 438 F.3d 404, 434 (4th Cir. 2006)) ("There is some uncertainty

as to whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1)

motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim.  In the

context of administrative remedies, 'the line between Rule 12(b)(1) and a Rule 12(b)(6) motions

[sic] has become "indefinable."'"). The Fourth Circuit has acknowledged that the line between a

Rule 12(b)(1) and 12(b)(6) motion is blurred, but that "[a] 12(b)(1) motion addresses whether [a

party] has the right to be in the district court at all and whether the court has the power to hear

and dispose of his claim, and a 12(b)(6) motion addresses whether [a plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

With respect to Rule 12(b)(1), challenges to jurisdiction can be raised in two ways: facial attacks and factual attacks. *Bolt v. United States*, 2015 WL 7568241, at *1 (D.S.C. Oct. 16, 2015) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986)). "A facial attack questions the sufficiency of the complaint. In this context, the court must accept the allegations in the complaint 'as true, and materials outside the pleadings are not considered.'" *Id.* (quoting *Thigpen*, 800 F.2d at 401 n.15). A factual attack "challenges the factual allegations in the complaint upon which subject-matter jurisdiction is based." *Id.* (citing *Thigpen*, 800 F.2d at 401 n.15). When considering a factual attack under Rule 12(b)(1), the court should consider evidence outside the pleadings, without converting the motion to one for summary judgment. *Id.* (citations omitted). "[A] dismissal should only be granted when 'the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of "entitlement to relief."'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The pleader must provide more than mere "labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555 (citations omitted).  In reviewing claims for failure to state a claim, a court must construe the

allegations in the light most favorable to the plaintiff.  *Haynsworth Sinkler Boyd, P.A. v. Holmes

(In re Holmes)*, 610 B.R. 541, 546 (Bankr. D.S.C. 2020).   Under both a Rule 12(b)(1) and Rule

12(b)(6) standard, the defendant's motion fails.

## <u>ANALYSIS</u>

1. <u>Lack of Capacity</u>

    The defendant argues that it does not have the capacity to be sued in a class action.  The

defendant relies on Fed. R. Civ. P. 17(b), which provides that the law of the state where the court

is located determines capacity to sue or be sued. The defendant argues that South Carolina law,

specifically S.C. Code § 12-60-80(C), provides that the defendant cannot be sued in any class

action and therefore cannot be named as a party in this action.  The defendant relies on the South

Carolina Supreme Court's recent case, *Aiken v. South Carolina Department of Revenue*, 429 S.C.

414 (2020), in which the court found that South Carolina Code § 12-60-80(C) provides that a

state agency cannot be named in *any* class action brought in the state of South Carolina.

    The plaintiffs respond that Rule 17 is irrelevant because Fed. R. Civ. P. 23, made

applicable to this proceeding by Fed. R. Bankr. P. 7023, governs, and the United States Supreme

Court held in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393

(2010) that a state law class action bar cannot trump Rule 23's authorization of class actions in

federal court proceedings.

    In *Shady Grove*, the Supreme Court considered a class action against Allstate Insurance

Company for failure to pay interest on overdue benefits.  The United States District Court for the

Eastern District of New York dismissed the lawsuit for lack of jurisdiction, holding that a New

York state law that precluded a suit to recover a penalty from proceeding as a class action

applied and prevented the plaintiffs' action from going forward in federal court. *Shady Grove*,

559 U.S. at 397.  The Second Circuit affirmed, finding that if Rule 23 conflicted with New York

law, Rule 23 would control, but deciding that there was no conflict between the two rules.  *Id.* at

398.

The Supreme Court's decision was divided.  A plurality found that the New York law at

issue conflicted with Rule 23 and that Rule 23 was valid under the Rules Enabling Act;

therefore, the Court found that Rule 23 governed and the class action was not prohibited.  *Id.* at

416.  However, the rationale for this holding differed among the justices in the majority.  "When

a fragmented Court decides a case and no single rationale explaining the result enjoys the assent

of five Justices, the holding of the Court may be viewed as that position taken by those Members

who concurred in the judgments on the narrowest grounds."  *United States v. Mashburn*, 406

F.3d 303, 308 (4th Cir. 2005) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).  A

majority of courts agree that Justice Stevens' opinion is controlling under this "narrowest

grounds" principle.  *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) (citations

omitted).

Justice Stevens found that in the case before the Court, Rule 23 should apply.  *Id.* at 416.

He also agreed with the dissent, however, that "there are some state procedural rules that federal

courts must apply in diversity cases because they function as part of the State's definition of

substantive rights and remedies."  *Id.* at 416-17.  Justice Stevens discussed the two-step

framework created by the Court that federal courts sitting in diversity must use in determining

whether federal or state law applies if both appear to govern in a federal case.  *Id.* at 420.  First,

the court must determine whether the scope of the federal rule is "sufficiently broad to control

the issue before the court, thereby leaving no room for the operation of seemingly conflicting

state law." *Id.* at 421 (cleaned up).  If so, then the Court should engage in the traditional *Erie*

analysis.[2] *Id.*  "If, on the other hand, the federal rule is 'sufficiently broad to control the issue

before the Court,' such that there is a 'direct collision,' the court must decide whether application

of the federal rule 'represents a valid exercise' of the 'rulemaking authority . . . bestowed on this

Court by the Rules Enabling Act.'" *Id.* at 422 (quoting *Burlington N. R.R. Co. v. Woods*, 480

U.S. 1, 5 (1987)).  The Rules Enabling Act requires that federal rules do not "abridge, enlarge or

modify *any* substantive right." *Id.* (quoting 28 U.S.C. § 2072(b)).

Justice Stevens stated that "[a] federal rule [ ] cannot govern a particular case in which

the rule would displace a state law that is procedural in the ordinary use of the term but is so

intertwined with a state right or remedy that it functions to define the scope of the state-created

right." *Id.* at 423.  Turning to the case specifically before the Court, Justice Stevens stated that

Rule 23 "squarely governed the determination" regarding whether the district court should

certify the matter as a class action and stated, "Rule 23, therefore, must apply unless its

application would abridge, enlarge, or modify New York rights or remedies." *Id.* at 430.  Justice

Stevens stated:

> In my view, however, the bar for finding an Enabling Act problem is a high
> one.  The mere fact that a state law is designed as a procedural rule suggests
> it reflects a judgment about how state courts ought to operate and not a
> judgment about the scope of state-created rights and remedies.  And for the
> purposes of operating a federal court system, there are costs involved in
> attempting to discover the true nature of a state procedural rule and allowing
> such a rule to operate alongside a federal rule that appears to govern the
> same question.  The mere possibility that a federal rule would alter a state-
> created right is not sufficient.  There must be little doubt."

---

[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) provides that "'federal courts sitting
in diversity apply state substantive law and federal procedural law.'"  *Simmons v. Sci. Int'l. Applications Corp.*,
2012 WL 761716, at *2 (D.S.C. Feb. 13, 2012) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 418, 427
(1996)).

*Id.* at 432.  Justice Stevens then examined the New York law at issue and acknowledged that

there are two possible interpretations regarding the legislature's intention in enacting the law.  *Id.*

at 435.  Based on these considerations, Justice Stevens stated:

> Although one can argue that class certification would enlarge New York's "limited" damages remedy, such arguments rest on extensive speculation about what the New York Legislature had in mind when it created § 901(b). But given that there are two plausible competing narratives, it seems obvious to me that we should respect the plain textual reading of § 901(b), a rule in New York's procedural code about when to certify class actions brought under any source of law, and respect Congress' decision that Rule 23 governs class certification in federal courts.  In order to displace a federal rule, there must be more than just a possibility that the state rule is different than it appears.

*Id.* at 436 (internal citations omitted).

The defendant asserts that *Shady Grove* is not applicable to this case because *Shady Grove* only deals with situations in which the district court sits in diversity jurisdiction.  Because that is not the case here, the defendant argues, *Shady Grove* is not instructive.  The defendant also argues that the state rule at issue in this case is different than the rule at issue in *Shady Grove,* because the statute in *Shady Grove* created a broad prohibition on certain types of class actions that applied to all litigants, while the statute here applies only to specific government entities and defines their capacity for being sued in class actions.  Finally, the defendant argues that even if *Shady Grove* does apply, the plaintiffs' class claims are still barred, because S.C. Code § 12-60-80(C) is substantive, not procedural.

First, the fact that *Shady Grove* involved a diversity jurisdiction case is immaterial. Bankruptcy jurisdiction is different from other federal jurisdiction.  *See* 28 U.S.C. §§ 157, 1334(b).  Bankruptcy courts have the power to adjudicate all proceedings "arising in," "arising under," or "related to" a bankruptcy case.  *In the Matter of FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996) (citing *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994)).

This extends beyond usual federal question jurisdiction and sweeps in state law and "other federal law" disputes that must necessarily be resolved in the process of ruling on a creditor's proof of claim or that stem from the bankruptcy itself. *See Stern v. Marshall*, 564 U.S. 462 (2011). The automatic stay and discharge injunction stem from the bankruptcy itself. The unjust enrichment cause of action is based on the Court's § 105 powers. The plaintiffs' causes of action here without question "arise in," "arise under," or are "related to" the bankruptcy cases. And there is no indication in the Supreme Court's opinion that *Shady Grove*'s holding does not apply in bankruptcy cases.

The defendant also argues that the statute at issue here is different than the statute in *Shady Grove* because it only applies to specific government entities' ability to be sued, as opposed to being a "broad prohibition on class actions" that applies to all civil litigants. This argument is also unavailing. S.C. Code § 12-60-80(C) applies to all parties seeking to commence litigation against the defendant, and according to the defendant's interpretation, prevents *any* type of class action from being asserted against it. This is a "broad prohibition on class actions" that applies to all litigants, just like the statute at issue in *Shady Grove*.

Courts have stated that the right to proceed in a class action is a procedural right. *Blaz v. Belfer*, 368 F.3d 501, 504 (5th Cir. 2004) (finding that there is "no substantive right to pursue a class action" in either Texas state court or federal court); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 1.01 (1992)) ("A class action is a procedural device, that can accomplish significant judicial economy."); *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 42 (N.D. Cal. 1977) ("[C]lass actions are a procedural device for promoting the economic and efficient disposition of justiciable controversies."). S.C. Code § 12-60-80(C)'s limitation on maintaining a class action

suit against the defendant does not affect substantive rights, but merely limits the method by which an action against the defendant is brought.

The defendant also argues that S.C. Code § 12-60-80(C) is analogous to the South Carolina Unfair Trade Practices Act ("SCUTPA") and the South Carolina Consumer Protection Code. In support of this argument, the defendant cites *Stalvey v. American Bank Holdings, Inc.*, 2013 WL 6019320 (D.S.C. Nov. 3, 2013), in which the United States District Court for the District of South Carolina considered causes of action under the SCUTPA and the South Carolina Consumer Protection Code. The relevant provision of the SCUTPA, found at S.C. Code § 39-5-140 states, in relevant part:

> (a)   Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity*, to recover actual damages.

(emphasis added). The relevant South Carolina Consumer Protection Code section, found at S.C. Code § 37-10-105, states:

> If a creditor violates a provision of this chapter, the debtor has a cause of action, *other than in a class action*, to recover actual damages and also a right in an action, *other than in a class action*, to recover from the person violating this chapter a penalty in an amount determined by the court of not less than one thousand five hundred dollars and not more than seven thousand five hundred dollars. *No debtor may bring a class action for a violation of this chapter.*

(emphasis added).

In *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 729 (D.S.C. 2016), the court discussed the SCUTPA. The court considered a motion to dismiss a potential class action lawsuit. The court discussed *Shady Grove* at length and found that the SCUTPA is different from the state law at issue in *Shady Grove* because the law at issue in *Shady Grove* was purely

procedural in nature.  *Id.* at 728.  The court found that because the class action prohibition in the

SCUTPA is found in the very section that conveys the substantive right, the private right of

action, the SCUTPA's class action prohibition is not purely procedural and Rule 23 cannot

displace it.  *Id.* at 729.  The court stated:

> Where, as is true of section 39-5-140, the class prohibition is *part of the same sentence* that conveys the substantive right, the undersigned believes it would be an irresponsible reading of the statute not to account for that class prohibition as shaping the scope of the right conveyed.  The Court need not speculate about what result it would have reached if conducting a similar analysis of Code of Ala. § 8-19-10, wherein the procedural element of the statute (subsection (f), class prohibition) is distinct from the substantive element (subsection (a), private right of action).

*Id.* at 729.  Similarly, in *Stalvey*, the case relied on by the defendant, the court found that the

"prohibitions against class actions [were] ingrained in the very text of the SCUTPA and

Consumer Protection code" and therefore were "substantive portions of South Carolina law."

*Stalvey*, 2013 WL 6019320, at *4.

The statute at issue here, S.C. Code § 12-60-80, is also different from the SCUTPA and

the South Carolina Consumer Protection Code. Subsection (A) provides a limitation on remedies

for the wrongful collection of taxes.  Subsection (B) sets forth the location (circuit court) in

which a declaratory judgment action regarding the unconstitutionality of a statute can be

maintained.  Finally, subsection (C) places limitations on class actions against certain state

entities.  Unlike the SCUTPA and the South Carolina Consumer Protection Code discussed in

*Stalvey* and *Fejzulai*, S.C. Code § 12-60-80(C) is not the basis for a litigant's substantive right of

action relating to the wrongful collection of taxes.  The state law limitation on class actions

against the defendant is not so "intertwined with a state right or remedy that it functions to define

the scope of the state-created right."  *See Shady Grove*, 559 U.S. at 423.  Accordingly, pursuant

to *Shady Grove*, Rule 23, not the limitation set forth in S.C. Code § 12-60-80(C), applies.  And

importantly, the complaint in this adversary proceeding does not invoke a state law cause of action; rather, it asserts that actions to collect debt using the state setoff program, when done in the face of the automatic stay or a bankruptcy discharge, violate federally protected rights that should be protected in federal court under a federal procedural mechanism.

The main South Carolina case relied on by the defendant, *Aiken v. South Carolina Department of Revenue*, 429 S.C. 414 (2020), does not compel a different conclusion.  In *Aiken,* the South Carolina Supreme Court considered a declaratory judgment class action against the South Carolina Department of Revenue for refunds of amounts garnished from putative class member wages to satisfy debts owed to other governmental entities.  *Id.* at 416.  The Department of Revenue sought to dismiss the case based on S.C. Code § 12-60-80.  *Id.*  The South Carolina Supreme Court found that, although S.C. Code § 12-60-80 was not in the same chapter of the South Carolina Code as the statutes the Department of Revenue relied on to garnish the plaintiffs' wages, that "subsection 12-60-80(C) indicates no intent to limit or restrict the general words 'any other class action' in the catchall clause of subsection (C) to the specific subject of 'taxes' set forth in the first portion of subsection (C)."  *Id.* at 420.  Accordingly, the South Carolina Supreme Court found that S.C. Code § 12-60-80(C) prohibited the plaintiffs' state court class action against the Department of Revenue.

Whatever the effect of the South Carolina Supreme Court's holding in *Aiken* may be on other cases, it does not have an effect on this case.  As stated above, *Shady Grove* governs and requires the application of Rule 23.  *Aiken*, while it may prohibit state class actions and class actions based on state causes of action, is not instructive here.

The parties also disagree as to the meaning of "capacity."   The defendant argues that S.C. Code § 12-60-80(C) is a capacity statute, such that the statute defines its ability to be sued

in a class action.  The plaintiffs argue that the state statute does not govern the defendant's

capacity to be sued "as that term is used in Rule 17."  "'Capacity refers to a party's personal right

to litigate in federal court.'"  *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 403 F.

Supp. 3d 257, 267 (S.D.N.Y. 2019) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL

464946, at *8 n.30 (S.D.N.Y. Feb. 25, 2009)); *see also Moore v. Matthew's Book Co., Inc.*, 597

F.2d 645, 647 (8th Cir. 1979) (citing *Basch v. Talley Indus., Inc.*, 53 F.R.D. 9 (S.D.N.Y. 1971))

("The question of capacity to sue is whether the person bringing the suit has authority to use the

courts of that jurisdiction.").  One commentator has explained the purpose of Rule 17(b) as

follows:

> Rule 17(b) is intended to serve as an accommodation between those
> interests that favor following local rules on the qualifications needed by a
> party to litigate in a federal forum and the desirability of a rule that provides
> national uniformity among the federal courts and assures access to those
> courts for certain types of litigants. . . . Capacity has been defined as a
> party's personal right to come into court, and should not be confused with
> the question of whether a party has an enforceable right or interest or is the
> real party in interest.  Generally, capacity is conceived of as a procedural
> issue dealing with the personal qualifications of a party to litigate and
> typically is determined without regard to the particular claim or defense
> being asserted.  The distinction between having capacity and having a claim
> for relief is significant because of its procedural ramifications.

Wright & Miller, Federal Practice and Procedure § 1559 (3d ed. Apr. 2020).  These authorities

make clear that Rule 17(b) refers generally to whether a party can sue or be sued—not whether

there are certain procedural limitations imposed by state law on the types of actions that can be

brought against the party.  *See Johnson v. Helicopter & Airplane Servs. Corp.*, 404 F. Supp. 726,

729 (D. Md. 1975) (considering a corporation's capacity under Rule 17(b) and discussing

capacity generally stating, "Capacity is the ability of a particular individual of [sic] entity to use,

or to be brought into, the courts of a forum.  It has no direct correlation to the conducting of

business, the existence of an enforceable right, interest, cause of action, claim or defense, or

whether a party is a real party in interest.") (internal citations omitted).  Cases discussing

capacity in the context of Rule 17 generally deal with issues involving minors, mental capacity,

unincorporated associations, and state-created entities such as jails.  *See Thomas v. Humfield*,

916 F.2d 1032, 1034-35 (5th Cir. 1990) (considering incompetent person's capacity to sue under

Rule 17 and which law, federal or state, applies to such a determination);  *Gonzalez ex rel.*

*Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1181 (S.D. Fla. 2000) (finding six year old child did not

have the capacity to sue on his own behalf under either Cuban or Florida law); *Harris v. N. Neck*

*Reg'l Jail Bd. Auth.*, 2008 WL 4468080, at *2, 3 (E.D. Va. Oct. 1, 2008) (finding that jail board

did not have capacity to be sued because the state statute forming the board did not contain any

authority for it to sue or be sued); *E.E.O.C. v. St. Francis Xavier Parochial School*, 77 F. Supp.

2d 71, 75-78 (D.D.C. 1999) (discussing capacity to be sued of unincorporated division of a

corporation and finding that such a division does not meet the definition of "unincorporated

association" in Rule 17(b)).  South Carolina has stated that the defendant has the general capacity

to be sued.  1987 S.C. Op. Atty. Gen. 204 (1987).  Accordingly, the defendant's lack of capacity

argument is unavailing.

Again, despite the defendant's argument to the contrary, the causes of action asserted by

the plaintiffs here are not for the wrongful collection of taxes – they involve the defendant's

alleged violation of the stay, violation of the discharge injunction, and unjust enrichment as a

component of bankruptcy § 105 authority.  The violation of stay and violation of discharge

injunction causes of action do not involve questions of state law.  They involve federal

bankruptcy law.  In addition, the unjust enrichment cause of action is intimately connected to the

plaintiffs' bankruptcy cases because it involves actions of the defendant taken during or after the

bankruptcy cases and involves debts treated in those bankruptcy cases.  While the state of South

15

Carolina can certainly place limitations on litigants' abilities to bring certain actions in state

court, those limitations do not extend to causes of action brought under federal bankruptcy law,

in the bankruptcy court.  The defendant's arguments regarding its lack of capacity to be sued in a

class action for the causes of action asserted by the plaintiffs fall short.

## 2.  <u>Sovereign Immunity</u>

The defendant's sovereign immunity argument also fails.  The defendant argues that it is

entitled to sovereign immunity under the Eleventh Amendment and that although Congress

attempted to abrogate the defense of sovereign immunity in bankruptcy cases by enacting 11

U.S.C. § 106, the Fourth Circuit, in *Schlossberg v. Maryland*, 119 F.3d 1140 (4th Cir. 1997),

stated that § 106 is unconstitutional.  Because the United States Supreme Court has not overruled

*Schlossberg*, the defendant argues, it is still the law in this Circuit and the defendant has

sovereign immunity that requires dismissal of this action.

In *Schlossberg*, a chapter 7 trustee sued the State of Maryland Comptroller of the

Treasury to avoid as a preference the debtor's payment of income taxes to the state within 90

days of the bankruptcy filing as a preference.  *Schlossberg*, 119 F.3d at 1142.  After the lower

courts found that the payment was not a preference because it was made in the ordinary course of

business, the Fourth Circuit considered a new argument by the state – that it was immune from

being sued under the Eleventh Amendment.  *Id.* at 1143.  The Fourth Circuit concluded that

Congress "did not have the power to abrogate the state's sovereign immunity from federal

jurisdiction," and that the state had not waived its immunity with respect to the trustee's lawsuit;

therefore, the Fourth Circuit vacated the district court's judgment and remanded the case with

instructions to dismiss the trustee's action.  *Id.*  After a lengthy discussion, the Fourth Circuit

stated:

> In summary, we conclude in light of [*Seminole Tribe of Florida v.
> Florida*, 517 U.S. 44 (1996)] that Congress is not empowered to use
> Article I authority, specifically, the Bankruptcy Clause, to circumvent the
> Eleventh Amendment's restriction on federal jurisdiction.  Because there
> is no evidence that Congress either passed the Bankruptcy Code under § 5
> of the Fourteenth Amendment or sought to preserve the core values
> specifically enumerated in that amendment, we hold that Congress' effort
> to abrogate the states' Eleventh Amendment immunity through its 1994
> enactment of 11 U.S.C. § 106(a) is unconstitutional and ineffective.

*Schlossberg*, 119 F.3d at 1147.

In 2006, the United States Supreme Court decided *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006).  *Katz* involved a chapter 11 trustee's preference action against certain colleges, seeking to recover payments made by the debtor while insolvent.  The colleges sought to dismiss the action on the grounds of sovereign immunity.  *Katz*, 546 U.S. at 360.  The bankruptcy court denied the motions to dismiss, and the district court and Sixth Circuit affirmed.  *Id.* at 360-61.  The United States Supreme Court granted certiorari to consider "whether Congress' attempt to abrogate state sovereign immunity in 11 U.S.C. § 106(a) is valid."  *Id.* at 361.  However, the Supreme Court determined that it did not have to answer that question, because it found that the "enactment of [§ 106] was not necessary to authorize the Bankruptcy Court's jurisdiction over [ ] preference avoidance proceedings."  *Id.*  In so finding, the Court stated:

> The ineluctable conclusion, then, is that States agreed in the plan of the
> Convention not to assert any sovereign immunity defense they might have
> had in proceedings brought pursuant to "Laws on the subject of
> Bankruptcies." The scope of this consent was limited; the jurisdiction
> exercised in bankruptcy proceedings was chiefly *in rem*—a narrow
> jurisdiction that does not implicate state sovereignty to nearly the same
> degree as other kinds of jurisdiction. But while the principal focus of the
> bankruptcy proceedings is and was always the res, some exercises of
> bankruptcy courts' powers—issuance of writs of habeas corpus included—
> unquestionably involved more than mere adjudication of rights in a res. In
> ratifying the Bankruptcy Clause, the States acquiesced in a subordination of
> whatever sovereign immunity they might otherwise have asserted in

17

proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.

Neither our decision in *Hood,* which held that States could not assert sovereign immunity as a defense in adversary proceedings brought to adjudicate the dischargeability of student loans, nor the cases upon which it relied, rested on any statement Congress had made on the subject of state sovereign immunity. Nor does our decision today. The relevant question is not whether Congress has "abrogated" States' immunity in proceedings to recover preferential transfers. The question, rather, is whether Congress' determination that States should be amenable to such proceedings is within the scope of its power to enact "Laws on the subject of Bankruptcies." We think it beyond peradventure that it is.

Congress may, at its option, either treat States in the same way as other creditors insofar as concerns "Laws on the subject of Bankruptcies" or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant "abrogation" is the one effected in the plan of the Convention, not by statute.

*Katz*, 546 U.S. at 377-79 (internal citations omitted).  Thus, the Supreme Court found that the trustee's preference action was not barred by sovereign immunity.

More recently, the Supreme Court interpreted and clarified its holding in *Katz* when it decided *Allen v. Cooper*, 140 S. Ct. 994 (2020), a copyright infringement case in which it considered North Carolina's defense of state sovereign immunity.  The Court ultimately found that Congress did not have authority to abrogate states' sovereign immunity from copyright infringement suits.  The appellant argued that because the Court in *Katz* determined that the Bankruptcy Clause of Article I allowed Congress to subject states to bankruptcy proceedings, the same should be true with respect to the Intellectual Property Clause of Article I.  *Allen*, 140 S. Ct. at 1002.  In addressing this argument, the Court stated:

In *Central Va. Community College v. Katz*, 546 U.S. 356, 359, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), we held that Article I's Bankruptcy Clause enables Congress to subject nonconsenting States to bankruptcy proceedings (there, to recover a preferential transfer). We thus exempted the Bankruptcy Clause from *Seminole Tribe*'s general rule that Article I cannot justify haling a State into federal court. In bankruptcy, we decided,

sovereign immunity has no place. But if that is true, Allen asks, why not say the same thing here? Allen reads *Katz* as "adopt[ing] a clause-by-clause approach to evaluating whether a particular clause of Article I" allows the abrogation of sovereign immunity. And he claims that the Intellectual Property Clause "supplies singular warrant" for Congress to take that step. That is so, Allen reiterates, because "Congress could not 'secur[e]' authors' 'exclusive Right' to their works if [it] were powerless" to make States pay for infringing conduct.

But everything in *Katz* is about and limited to the Bankruptcy Clause; the opinion reflects what might be called bankruptcy exceptionalism. In part, *Katz* rested on the "singular nature" of bankruptcy jurisdiction. That jurisdiction is, and was at the Founding, "principally *in rem*"—meaning that it is "premised on the debtor and his estate, and not on the creditors" (including a State). For that reason, we thought, "it does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction." In remaining part, *Katz* focused on the Bankruptcy Clause's "unique history." The Clause emerged from a felt need to curb the States' authority. The States, we explained, "had wildly divergent schemes" for discharging debt, and often "refus[ed] to respect one another's discharge orders." "[T]he Framers' primary goal" in adopting the Clause was to address that problem—to stop "competing sovereigns[ ]" from interfering with a debtor's discharge. And in that project, the Framers intended federal courts to play a leading role. The nation's first Bankruptcy Act, for example, empowered those courts to order that States release people they were holding in debtors' prisons. So through and through, we thought, the Bankruptcy Clause embraced the idea that federal courts could impose on state sovereignty. In that, it was *sui generis*—again, "unique"—among Article I's grants of authority.

Indeed, *Katz*'s view of the Bankruptcy Clause had a yet more striking aspect, which further separates it from any other. The Court might have concluded from its analysis that the Clause allows Congress to abrogate the States' sovereign immunity (as Allen argues the Intellectual Property Clause does). But it did not; it instead went further. Relying on the above account of the Framers' intentions, the Court found that *the Bankruptcy Clause itself* did the abrogating. Or stated another way, we decided that no congressional abrogation was needed because the States had already "agreed in the plan of the Convention not to assert any sovereign immunity defense" in bankruptcy proceedings. We therefore discarded our usual rule—which Allen accepts as applying here—that *Congress* must speak, and indeed speak unequivocally, to abrogate sovereign immunity. Our decision, in short, viewed bankruptcy as on a different plane, governed by principles all its own. Nothing in that understanding invites the kind of general, "clause-by-clause" reexamination of Article I that Allen proposes. To the contrary, it points to a good-for-one-clause-only holding.

*Allen*, 140 S. Ct. at 1002-03 (internal citations omitted).  The Supreme Court made clear in *Allen*

that bankruptcy is unique, and that because of this uniqueness, "[i]n bankruptcy, [ ], sovereign

immunity has no place."  *Id.* at 1002.  Pursuant to this precedent, the plaintiffs' causes of action

against the defendant are not barred by sovereign immunity.

   3.   Failure to Exhaust Administrative Remedies

        The defendant also argues that the plaintiffs are not entitled to bring their causes of action

in the bankruptcy court because they have not yet exhausted their administrative remedies.  The

defendant asserts that the Setoff Debt Collection Act establishes administrative procedures that

must be followed before a federal action may be filed against the defendant contesting its actions

under the Setoff Debt Collection Act.  The defendant relies on several cases interpreting 26

U.S.C. § 7433 to support his failure to exhaust administrative remedies argument.

        26 U.S.C.A. § 7433 provides, in relevant part:

> (e)  Actions for violations of certain bankruptcy procedures.—
> (1) In general.  If, in connection with any collection of Federal tax with
> respect to a taxpayer, any officer or employee of the Internal Revenue
> Service willfully violates any provision of section 362 (relating to automatic
> stay) or 524 (relating to effect of discharge) of title 11, United States Code
> (or any successor provision), or any regulation promulgated under such
> provision, such taxpayer may petition the bankruptcy court to recover
> damages against the United States.

However, subsection (d) of § 7433 provides that damages may not be awarded on such a petition

"unless the court determines that the plaintiff has exhausted the administrative remedies

available to such plaintiff within the Internal Revenue Service."  The cases discussing § 7433 do

not support the defendant's position.  Section 7433 addresses federal taxes, and contains an

express provision allowing a plaintiff to file a petition in the bankruptcy court for violations of

the automatic stay and the discharge injunction, but limits this remedy to cases in which the

20

plaintiff has first exhausted its administrative remedies with the IRS.  The cases cited by the

defendant merely interpret the express provisions of this federal statute.

S.C. Code § 12-56-63 states, in relevant part:

> (A) A debtor who protests the debt shall file a written protest with the
> claimant agency at the address provided in the claimant agency's
> notification of intention to set off. The protest must be filed within thirty
> days of the date of the notice of intention to set off and must contain the
> debtor's name, address, and tax identification number, identify the type of
> debt in dispute, and give a detailed statement of all the reasons that
> support the protest. The requirements of this section are jurisdictional.

This South Carolina Code section contains no similar provisions expressly addressing claims for

violation of the automatic stay or the discharge injunction.

The South Carolina Code requires that administrative remedies be exhausted before an

action to protest a debt can be filed.  As discussed above, the plaintiffs' causes of action are not

to protest the debt, or even to protest the defendant's offset, or attempted offset of the debt.  The

plaintiffs' causes of action seek to enforce the protections to which they are entitled by virtue of

their bankruptcy cases—protection of the automatic stay and a fresh start, facilitated by the

discharge injunction.  The bankruptcy court has the authority under the Bankruptcy Code to

enforce the provisions of the Bankruptcy Code and its orders, including the provisions of 11

U.S.C. § 362 and the Court's discharge order.  The plaintiffs are not required to exhaust any

administrative remedies before they seek remedies for the defendant's alleged violations of the

Bankruptcy Code and the Court's discharge order.

The Bankruptcy Code provides for remedies upon violation of the automatic stay, and the

contempt power of federal courts is summoned to remedy violations of the discharge injunction.

*See* 11 U.S.C. § 362(k); *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1799-1801 (2019); *Workman v.

GMAC Mtg., LLC (In re Workman)*, 392 B.R. 189, 194 (Bankr. D.S.C. 2007).  A state law

restriction or impediment to a debtor seeking redress of these federally premised rights quickly runs afoul of the Supremacy Clause.  U.S. Const. art. VI, cl. 2.

**<u>CONCLUSION</u>**

For the reasons set forth above, the defendant's motion to dismiss this adversary proceeding is denied.  The defendant should file a responsive pleading in accordance with Fed. R. Bankr. P. 7012.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**07/08/2020**



Entered: 07/08/2020

David R. Duncan
US Bankruptcy Judge
District of South Carolina